STATE ex rel. J.E. DUNN CONSTRUCTION COMPANY, INC., Relator,

v.

The Honorable Richard P. SPRINKLE, Judge of the Circuit Court of Jackson County, Missouri, Civil Division No. 2, Respondent.

No. WD 34052.

Missouri Court of Appeals, Western District.

April 19, 1983.

Karl F. Schmidt, Leonard J. Johnson, and Theresa L.F. Levings, Kansas City, for J.E. Dunn Const. Co.

Paul H. Niewald, Michael E. Waldeck and Joseph W. Lampo, Dan G. Jackson, III, Kansas City, for respondent.

Before KENNEDY, P.J., and WASSER-STROM and MANFORD, JJ.

KENNEDY, Presiding Judge.

The present case involves the right of relator contractor J.E. Dunn Construction Company (defendant in the underlying litigation) to discover by means of interrogatories and requests for production of documents, certain information and documents collected by Great American Insurance Company in connection with the collapse of the Kemper Arena roof on June 4, 1979.

Respondent Judge Sprinkle refused to compel the answering of the interrogatories and refused to compel the production of the documents. Defendant Dunn has sought our writ of mandamus. Our alternative writ issued and we now make the writ peremptory.

On June 4, 1979, a part of the roof and supporting structure of Kemper Arena collapsed, causing a loss of $2,867,940. The building was insured by a policy of insurance issued by Great American Insurance Company against loss by windstorm, among other perils. The City of Kansas City, owner of the Arena, claimed that the collapse was caused by windstorm and that Great American was obligated under its policy to pay the loss, less $250,000 deductible. Great American denied coverage after its initial investigation, but at length, still denying liability, it agreed to pay the same as a compromise settlement. The settlement agreement was reached on August 3, 1979. The City agreed on its part that it would institute suit against third persons who might be responsible for the loss, the suit to be "at the sole direction and control of Great American."

The City on June 4, 1980, a year after the collapse, instituted suit against the building architect and against the structural steel supplier and fabricator, alleging that the collapse and the resultant damages resulted from their negligence. Defendant J.E. Dunn, the general contractor, was added later.

Dunn answered alleging that Great American had paid as a volunteer, not in the reasonable and good-faith belief that it was obligated to do so under its policy of insurance, and hence that no recovery could be had by Great American against Dunn. The parties really do not debate (and we therefore are not called upon to decide) the proposition that such facts, if established, would furnish Dunn a defense to the Great American claim. *United States Fidelity & Guaranty Co. v. Sweeney*, 80 F.2d 235, 238–39 (8th Cir.1935); *American Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 811 (Mo.App. 1969); *Commercial Union Insurance Co. v. Postin*, 610 P.2d 984, 987–89 (Wyo.1980); 16 G. Couch, Insurance, § 61.55 (rev. 2d ed. 1983).

During the June 4-August 3 period, during which time Great American was denying coverage, it conducted an investigation into the cause of the loss and carried on negotiations with the City. It is the contents of the files so generated by Great American and by the City during that period to which Dunn seeks access by these discovery procedures. Dunn's brief filed here contains what we find to be an accurate and fair summary of the interrogatories and requests and so we copy from the brief:

1. Interrogatory Nos. 4–5 and Request Nos. 1–8, 13 and 23 seek: (a) information and documents generated by or at the direction of Great American but in the possession, custody or control of the City regarding coverage and denial of coverage by Great American; and (b) other information and documents from the City's files regarding the same issues.

2. Interrogatory Nos. 6–7 and Request Nos. 9 and 11 seek: (a) information and documents generated by or at the direction of Great American in the possession, custody or control of the City regarding payment by Great American and the reasons therefor; and (b) other information and documents from the City's files regarding its receipt and use of said payment;

3. Interrogatory No. 9–B and Request No. 12 seek information and documents originally from Great American's file but now in the possession, custody or control of the City regarding any investigations by Great American into the cause of the collapse, and Interrogatory No. 8–B seeks information regarding the persons contacted by the City between June 4 and August 3, 1979, in an attempt to determine the cause of the collapse.

There can be little doubt that the information and documents sought by the interrogatories and by the requests for production would be relevant to the issues in the case, both as to the cause of the collapse and as to the defense that Great American paid as a volunteer, they would or might provide admissible evidence or would be reasonably calculated to lead to the discovery of admissible evidence. Rule 56.-01(b)(1).

The City says, however, first, that the information and documents sought by Dunn are protected by the attorney-client privilege, and second, that they are protected as work product, absent a showing that Dunn "has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 56.01(b)(3).

**I.**

■ We will first take up the question whether the information and documents sought come within the attorney-client privilege. We note here that the City does not differentiate among the various types of information or documents contained within

the file. They do not, for example, claim that communications between Great American and its attorney during the June 4-August 3 period, or communications between the City and its attorneys, have a separate privileged status. Cf. *State ex rel. Great American Insurance Co. v. Smith*, 574 S.W.2d 379 (Mo. banc 1978). The City instead undertakes to prevent Dunn's access to the entire file and all its contents on the ground of the insurer-insured relationship that existed between the City and Great American.

In this case the insurer-insured privilege (a variant of the attorney-client privilege) recognized in Missouri by *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc 1976), is not applicable. *Cain* deals with an automobile liability insurer and its insured, and it was there held that a statement made by the insured (the defendant in the underlying suit there) to his liability insurer about an automobile accident in which he had been involved, enjoyed an absolute privilege and was inaccessible to discovery by the plaintiff in the underlying suit. 540 S.W.2d at 53–57.

The relationship of a liability insurer, whose policy of insurance obliges it to defend its insured and to pay any judgment against its insured, is much different from that between the insurer of property which has been damaged by casualty and the owner of such property. In the former case, the relationship is basically a relationship of identity of interest, while in the latter case the relationship, at least until the insurer acknowledges coverage, is basically adversarial.[1] The insurer-insured privilege recognized in *State ex rel. Cain v. Barker*,

supra, has not been extended to the latter type of case. See *State ex rel. Spear v. Davis*, 596 S.W.2d 499, 500 (Mo.App.1980); *Truck Insurance Exchange v. Hunt*, 590 S.W.2d 425, 432 (Mo.App.1979).

We hold that an insurer-insured privilege is not applicable in this case to shield the City's and Great American's files from discovery.

## II.

We now come to the second ground on which the City seeks to prevent Dunn's access to the Great American file, namely, that the information sought and the documents requested to be produced are "work product." (The respondent's brief does not assert the "work product immunity for the City's file but only for Great American's.)

"Work product" is a qualified immunity under Rule 56.01(b)(3). It denies to one's adversary materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) . . . ," except upon a showing that the party seeking discovery "has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

■ We hold that the information and materials gathered by Great American during the June 4-August 3 period were not "work product," which is protected by Rule 56.01(b)(3) in litigation by Great American and by the City against Dunn.

The fiduciary duty of an insurer for good faith rests on the reservation of exclusive right to contest or negotiate the claim of liability brought against the insured, and so withhold from the insured the right to settle without consent of the insurer. . . . Such terms of agreement report in the insurer the power to act for the insured, akin to authority a client vests in an attorney, or a principal in an agent—each a relationship of inherent fiduciary obligation.

---

1. Judge Shangler, in another connection, pointed up the difference in the two relationships in *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716, 723 (Mo.App.1978):

    The mere relationship of insurer and insured does not import an obligation of trust. Rather, in the absence of special circumstances, the relation between the parties to a contract of insurance is that of debtor and creditor. . . .
    . . . .

■ The qualified "work product" immunity applies only to information and materials gathered by one's adversary in the litigation, or in preparation for the litigation, in which the discovery is being sought. *Bunting v. Gainsville Machine Co.,* 53 F.R.D. 594 (D.Del.1971). In *Bunting* a workman injured in the course of his employment brought suit for damages against the manufacturer of the machine which caused his injury. The defendant machine manufacturer sought to discover the contents of the files of the workmen's compensation insurer concerning the accident. The federal district court noted that the workmen's compensation insurer would be entitled to share in the plaintiff's recovery up to the amount of workmen's compensation benefits which it had paid. (In that respect, the workmen's compensation insurer was in exactly the same position in relationship to the defendant machine manufacturer as is Great American Insurance Company in relationship to Dunn in the present case.) Said the court:

> The rule was enacted to protect a party against the disclosure of materials (work product) which it prepared or which someone on its behalf prepared, more likely than not at that party's own expense, in connection with the prosecution of that party's own action or the defense by that party of an action brought against it. The protection was intended to encompass documents prepared by a party or someone acting on its behalf to aid that party in the litigation.

> The documents in the possession of Liberty Mutual do not fit this description. It was not paid by plaintiffs to assemble information for plaintiffs' use nor did it attempt to do so. In fact, in one aspect the interest of Liberty Mutual was adverse to plaintiffs'. When plaintiffs presented their claim under the Workmen's Compensation law it was necessary for Liberty Mutual to be in a position to protect itself against the assertion by plaintiffs of a false or exaggerated claim of injury. To prevent this, it was in Liberty Mutual's interest, and not plaintiffs', to collect information about the accident and to expend whatever of its monies were necessary to obtain it.

> Of course, as plaintiffs say, Liberty Mutual after paying plaintiffs, has an interest in having plaintiffs recover against the defendant at least the amount which Liberty Mutual under the Compensation Act had already paid. As subrogee of the plaintiffs, Liberty Mutual, if plaintiffs recovered, would be entitled to be reimbursed by plaintiffs up to that amount. This interest, while identical with plaintiffs', is far more remote and not as immediate as was its own interest when it assembled documentary evidence to protect itself against any unjustified claim which plaintiffs might make under the Compensation laws. So far as the record discloses Liberty Mutual never called upon plaintiffs to pay for the investigatory work which it did nor did plaintiffs request Liberty Mutual to do any.

> It would be stretching too far the language of Rule 26(b)(3) and the reason underlying it to accord plaintiffs the protection which they seek against the disclosure of documents in the possession of Liberty Mutual.

53 F.R.D. at 596.

The Missouri work product rule is a rescript of Federal Rule of Civil Procedure 26(b)(3), which was involved in *Bunting v. Gainsville Machine Co.,* supra. The same rule has been applied in Missouri, *State ex rel. Spear v. Davis,* supra, 596 S.W.2d at 500. The qualified work product immunity would have applied in litigation between the City and Great American, but it does not go the additional remove to apply between the City and Dunn.

Since we hold that the materials sought to be discovered are not "work product," it is not necessary for us to consider the question whether Dunn has shown that it has a substantial need therefor and an inability to obtain it, or its equivalent, by other means without undue hardship.

III.

The City reminds us that the writ of mandamus is not to be issued to control the trial judge's discretion, but is to be used only where the right of the relator is entirely clear. It quotes *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446 (Mo. banc 1976), where it is said:

"Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

535 S.W.2d at 448 (quoting *James v. Turilli*, 473 S.W.2d 757, 763 (Mo.App.1971)). We have no quarrel with that principle as a general proposition. We are less strict in applying it to refuse an extraordinary writ at the permanent writ stage than at the preliminary or alternative writ stage. *State ex rel. St. Joseph Light & Power Co. v. Donelson*, 631 S.W.2d 887, 892 (Mo.App. 1982). Cf., *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83, 85 n. 1 (Mo. banc 1974).

We have frequently employed the writ of prohibition and the writ of mandamus to resolve pretrial discovery disputes. *State ex rel. Hudson v. Ginn*, 374 S.W.2d 34 (Mo. banc 1964); *State ex rel. State Farm Mutual Automobile Insurance Co. v. Keet*, 601 S.W.2d 669 (Mo.App.1980); *State ex rel. Collins v. Donelson*, 557 S.W.2d 707 (Mo. App.1977); *State ex rel. Thomasville Wood Products, Inc. v. Buford*, 512 S.W.2d 220 (Mo.App.1974); *State ex rel. Danforth v. Riley*, 499 S.W.2d 40 (Mo.App.1973); *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799 (Mo.App.1972); *State ex rel. Mueller v. Dixon*, 456 S.W.2d 594 (Mo.App.1970).

We find that defendant Dunn's right to the discovery sought is clear, and our alternative writ of mandamus ought to be made peremptory. It is so ordered.

All concur.