Earl W. RICKMAN, Jr., Plaintiff,

v.

DEERE & COMPANY, John Deere Company, and John Deere Ltd., Defendants.

Civ. A. No. 3:92CV840.

United States District Court, E.D. Virginia, Richmond Division.

May 14, 1993.

Paul Granger Klockenbrink, Daniel Patrick Frankl, and James C. Joyce, Jr., Gentry, Locke, Rakes & Moore, Roanoke, VA, for plaintiff.

David H. Worrell, Jr. and Shannon Elizabeth Sinclair, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendants.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on the motion of defendant Deere & Company ("Deere"), pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the production of certain documents. For the reasons set forth below, as well as those stated from the bench, defendant's motion will be GRANTED.

### I.

In this action, plaintiff Earl W. Rickman, Jr., seeks compensation for injuries he alleges he suffered while operating a forage wagon manufactured by defendant Deere in February of 1991. The accident which resulted in plaintiff's injuries occurred on a dairy farm in Nottoway County, Virginia, owned by Rickman's employers, John and Tommy Jenkins.

At the time of the accident, the Jenkins's workers' compensation insurance carrier was Early Settlers Insurance Company, a subsidiary of Virginia Farm Bureau Insurance Company ("Farm Bureau"). Following the accident, Farm Bureau retained T.M. Everett [1] Claim Service to conduct an investigation with respect to Farm Bureau's possible subrogation rights against Deere and others. Because of the severity of plaintiff's injuries, Farm Bureau considered the litigation of subrogation claims to be highly probable.

The product of T.M. Everett's investigation was an investigatory report, which consisted of an initial report dated April 1, 1991, with a signed statement from Tommy Jenkins attached, and a supplemental report dat-

1. Or "Everette."

ed April 11, 1991, with photographs attached. Upon receipt of the report, Farm Bureau placed it in a separate file which it had created for the "subrogation aspect" of plaintiff's case. This file was separate and distinct from the company's workers' compensation file relating to plaintiff, and was handled by a different supervisor. Indeed, according to the affidavit of Farm Bureau workers' compensation supervisor Arlene A. Goodwin, the results of the T.M. Everett investigation were

> neither necessary nor considered in handling the workers' compensation claim because fault and negligence were not issues relevant to the claim under the Virginia workers' compensation laws.... [P]ayment of workers' compensation benefits began to the [plaintiff] before and without the benefit of the report of T.M. Everett.

Goodwin Aff. at ¶¶ 5–6.

■ A copy of the T.M. Everett report was obtained by plaintiff's counsel in preparing for the litigation of this matter. Additional copies remain in the hands of Farm Bureau.[2]

## II.

Rule 26(b)(3) of the Federal Rules of Civil Procedure states, in part:

> ... [A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial or for another party or by or for that other party's representative (including that other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The investigatory report and accompanying materials at issue here, plaintiff argues, were prepared by Farm Bureau in anticipation of subrogation litigation, and therefore are immune from discovery under the work product doctrine.

■ The protection accorded by Rule 26(b)(3), however, applies only to documents prepared by a "party" or a party's "representative." In this case, Farm Bureau is not a "party." Nor, as the workers' compensation carrier of plaintiff's employer, is it the "representative" or "insurer" of plaintiff Rickman himself, "any [ ] more than an insurance carrier of a person sued for negligence would be a 'representative' or 'insurer' of the injured party." *Bunting v. Gainsville Mach. Co.*, 53 F.R.D. 594, 595 (D.Del.1971). Reports prepared by Farm Bureau in preparation for its own potential subrogation litigation therefore do not fall within the literal terms of Rule 26(b)(3) for the purposes of this action. *Id.*

In *Bunting*, a leading case addressing such situations, the district court set forth its reasoning as follows:

> Plaintiffs argue ... that documents in the possession of Liberty Mutual [the workers' compensation carrier in that case] fall within the spirit of the Rule. They point out that Liberty Mutual, up to the amount of the compensation benefits which it has paid to plaintiffs, is entitled, as subrogee, to any recovery by plaintiffs against defendant, and can at any time become a party of the action. Plaintiffs assert that for these reasons Liberty Mutual in practical effect stands in the shoes of the plaintiffs and the Rule should be interpreted to protect plaintiffs from having Liberty Mutual reveal its records.
>
> The rule was enacted to protect a party against the disclosure of materials (work product) which it prepared or which someone on its behalf prepared, more likely than not at that party's own expense, in connection with the prosecution of that party's own action or the defense by that party of an action brought against it. The protection was intended to encompass documents prepared by a party or someone acting on its behalf to aid that party in the litigation.
>
> The documents in the possession of Liberty Mutual do not fit this description. It was not paid by plaintiffs to assemble in-

---

2. As an initial matter, the Court notes that plaintiff has no standing to object to any attempt by defendants to obtain a copy of the report via a subpoena issued to Farm Bureau, a non-party. Such an objection must be raised, if at all, by Farm Bureau on its own behalf. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); *Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D.Md.1980).

formation for plaintiffs' use nor did it attempt to do so. In fact, in one aspect the interest of Liberty Mutual was adverse to plaintiffs'. When plaintiffs presented their claim under the Workmen's Compensation law it was necessary for Liberty Mutual to be in a position to protect itself against the assertion by plaintiffs of a false or exaggerated claim of injury. To prevent this, it was in Liberty Mutual's interest, not plaintiffs', to collect information about the accident and to expend whatever of its monies were necessary to obtain it.

Of course, as plaintiffs say, Liberty Mutual after paying plaintiffs, has an interest in having plaintiffs recover against the defendant at least the amount which Liberty Mutual under the Compensation Act had already paid. As subrogee of the plaintiffs, Liberty Mutual, if plaintiffs recovered, would be entitled to be reimbursed by plaintiffs up to that amount. This interest, while identical with plaintiffs', is far more remote and not as immediate as was its own interest when it assembled documentary evidence to protect itself against any unjustified claim which plaintiffs might make under the Compensation laws. So far as the record discloses Liberty Mutual never called upon plaintiffs to pay for the investigatory work which it did nor did plaintiffs request Liberty Mutual to do any.

It would be stretching too far the language of Rule 26(b)(3) and the reason underlying it to accord plaintiffs the protection which they seek against the disclosure of documents in the possession of Liberty Mutual.

*Id.* at 595–96. *See also Greener v. American Laundry Mach., Div. of McGraw Edison Co.,* 36 Fed.R.Serv.2d (Callaghan) 1194, 1195–96 (D.Mass.1983); *Prucha v. M & N Modern Hydraulic Press Co.,* 76 F.R.D. 207, 209 (W.D.Wis.1977); *State ex rel. J.E. Dunn Constr. Co. v. Sprinkle,* 650 S.W.2d 707, 711 (Mo.Ct.App.1983).

Thus, while plaintiff's assertion of the work product rule might prove apt if Farm Bureau were a party, or even if Farm Bureau had brought this case in plaintiff's name, *see Kelleher v. Omark Indus., Inc.,* 19 Fed. R.Serv.2d (Callaghan) 725, 726 (D.Mass.1974) (distinguishing *Bunting* ), it is not applicable

to the investigatory report at issue given the present posture of this case.

### III.

For the reasons set forth above, the Court determines that the Farm Bureau investigatory report sought by defendant Deere does not fall within the scope of Rule 26(b)(3). Defendant's motion to compel production of the report will therefore be GRANTED.

An appropriate Order will issue.

### *ORDER*

This matter is before the Court on defendant Deere & Company's motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the production of certain documents.

For the reasons stated in the accompanying Memorandum Opinion, defendant's motion is hereby GRANTED and plaintiff is hereby ORDERED to produce the documents requested to defendant as soon as is practicable.

And it is SO ORDERED.