Scott C. BRANTLEY, et al.,
Plaintiffs/Appellants,

v.

SEARS ROEBUCK & CO., et al.,
Defendants/Respondents.

No. 71470.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 13, 1998.

Richard C. Homire, St. Louis, for appellant.

Leritz, Plunkert & Bruning, P.C., Christopher E. McGraugh, St. Louis, for respondent.

PUDLOWSKI, Judge.

On 1 April 1989, Scott and Bonita Brantley's (Brantley) residence was damaged by a fire. They brought this action on behalf of American Family Insurance Company (Insurer) seeking recovery from Sears Roebuck & Co. (Sears) alleging their Sears Kenmore dishwasher caused the fire. We affirm.

At the time of the fire, neither of the Brantleys were at home. Mrs. Brantley testified she left the house at nine a.m. and at noon. She stated she turned on the dishwasher as she left the house at noon. The Ballwin Fire Department arrived and extinguished the fire. However, the house was completely destroyed. During the subsequent investigation, an inspector determined the fire originated in the kitchen, specifically in the area near the dishwasher.

Following the fire, the Brantleys contacted their insurance carrier. Insurer received a report from Mr. Brantley stating the dishwasher was the probable cause of the fire and that the last time the dishwasher was used was prior to leaving the house at eleven a.m. on the day of the fire.

Insurer then sent an adjuster to investigate the Brantley claim. Adjuster took a statement from Mrs. Brantley. In her statement to the adjuster, Mrs. Brantley stated she left the house twice on the morning of the fire and could not remember which time she turned on the dishwasher.

Insurer hired its own expert to perform a cause and origin investigation of the fire. This report and the Brantley statement were submitted to Insurer to determine if the claim would be paid. Ultimately, Insurer paid out on the Brantley claim.

This action seeks to recover damages from Sears alleging the dishwasher was the origin of the fire. Sears requested Insurer produce Mrs. Brantley's original statement to the adjuster. The trial court compelled production of the statement over the Brantley's objec-

tion. Both the Brantleys and Sears submitted expert testimony regarding the origin of the fire. On 1 August 1996, the jury returned a verdict in favor of Sears and judgment was entered in accordance with this verdict. Brantley filed a motion for new trial which the trial court denied after a hearing. This appeal follows.

Brantley contends the trial court improperly allowed Mrs. Brantley's statement to the adjuster to be admitted and used to impeach her testimony. In so reasoning, Brantley relies on a variant of the attorney-client privilege as granted to an insured-insurer by *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo.1976). In *Cain*, an insurer was required to defend its insured in a wrongful death action. The statement made by the insured to his automobile liability insurance company's adjuster was held to be privileged and his statement was inadmissible. This insured-insurer privilege is not applicable in the instant case.

■ The relationship of a liability insurer who is obligated to defend the insured and pay any resulting judgment differs from that of the insurer of damaged property. *State ex rel. J.E. Dunn Construction Co., Inc. v. Sprinkle*, 650 S.W.2d 707, 710 (Mo.App. W.D. 1983). The former relationship is characterized as one of identity of interest; the latter relationship is adversarial until the insurer acknowledges coverage under its policy terms. *Id.* The insurer-insured privilege announced in *Cain* does not extend to relationships covering a casualty loss. *Id. See also State ex rel. Spear v. Davis*, 596 S.W.2d 499, 500–01 (Mo.App. E.D.1980); and *Truck Ins. Exch. v. Hunt*, 590 S.W.2d 425, 432 (Mo.App. S.D.1979). Brantley and Insurer's relationship was characterized by a casualty loss and not a duty to defend. Accordingly, we hold that Brantley's statement does not fall under the aegis of the insurer-insured privilege.

■ Brantley further claims the statement should have been excluded since the statement is "work product." Work product is a qualified immunity pursuant to Rule 56.01(b)(3) which denies the opposing party materials "prepared in anticipation of litiga-

tion or for trial by or for another party or by or for that other party's representative...." Work product immunity applies only to information and materials gathered by one's adversary in the litigation, or in preparation for the litigation, in which the discovery is being sought; there must be a possibility of litigation. *State ex rel. Polytech, Inc. v. Voorhees*, 895 S.W.2d 13, 14 (Mo. banc 1995).

Protection of work product does not embrace materials prepared in anticipation of prior unrelated litigation. *State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 80 (Mo. banc 1984). Insurer recorded Mrs. Brantley's statement regarding the events on the day of the fire to determine if Brantley had a legitimate claim against Insurer under policy terms rather than to prepare for possible litigation against Sears. Therefore, Brantley's statement recorded by Insurer is not protected work product. Point denied.

Next, Brantley alleges the trial court erred in permitting Sears to cross-examine Brantley's expert about Insurer. Over objection, the expert admitted he testified for Insurer over one-hundred fifty times, and that he did so in order for Insurer to "get its money back." Brantley argues that the receipt of insurance proceeds and the subsequent subrogation claim is irrelevant and should be excluded.

The extent and scope of cross-examination is within the trial court's discretion. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 869 (Mo. banc 1993). Such an abuse only arises where the trial court's ruling was clearly against the logic of the circumstances, and so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration. *House v. Missouri Pacific Railroad Co.*, 927 S.W.2d 538, 540 (Mo. App. E.D.1996).

The trial court properly allowed the testimony to show bias and prejudice on the part of the expert. *Houfburg v. Kansas City Stock Yards Co. of Maine*, 283 S.W.2d 539, 548 (Mo.1955); *Callahan*, 863 S.W.2d at 869. While evidence of payment by an insurer is not ordinarily admissible, if the evidence is relevant and material for another purpose it may be properly admitted. *Houfburg*, 283 S.W.2d at 549. Pecuniary interest and bias of a witness is always admissible, and is only limited by the discretion of the trial court. *Id.* The trial court allowed testimony that the expert was regularly hired by Insurer, and that expert had worked on over one-hundred fifty cases for Insurer. The expert admitted he testified in this case so that Insurer might receive $154,000 of its money back. Such testimony was proper to show bias. We find no abuse of discretion. Point denied.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.