Bernd NICKLASCH and Sally
Nicklasch, Plaintiffs,

v.

JLG INDUSTRIES, INC.; Wiese Equipment Rental; and Tri–State Machining, Defendants.

No. IP98–1090–C–D–/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 6, 1999.

James R. Fisher, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for plaintiff.

Lawrence M. Hansen, Thomas R. Harper, Kopka, Landau & Pinkus, Indianapolis, IN, George E. Purdy, Bose, McKinney & Evans, LLP, Indianapolis, IN, Kevin C. Schiferl, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendants.

## ORDER

FOSTER, United States Magistrate Judge.

### Compelling production of statement of Pat Campbell.

The plaintiffs were ordered to submit a statement by Pat Campbell for *in camera* review by the Court in order to determine its discoverability against the plaintiffs' assertion of work product protection. Entry of November 23, 1999 (doc. no. 99). The statement was taken by plaintiff Bernd Nicklasch's employer's worker's compensation carrier from Bernd Nicklasch's work supervisor the day after the accident. The plaintiffs contend that the statement was taken by the carrier for two purposes: first, in order to determine coverage under its policy with Bernd Nicklasch's employer and, second, to investigate possible subrogation claims against responsible parties. On examination of the statement and consideration of argument, the Court rules that the statement is not work product.

First, the worker's compensation carrier is not a party to this action and, at the time Mr. Campbell's statement was taken, it was not Mr. or Mrs. Nicklasch's representative, attorney, consultant, surety, indemnitor, insurer, or agent. Fed.R.Civ.P. 26(b)(3). As the insurer of the employer, a worker's compensation carrier is not the insurer, representative, or agent of the injured employee. *Rickman v. Deere & Company,* 154 F.R.D.

137, 138 (E.D.Va.1993), *affirmed*, 36 F.3d 1093 (4th Cir.1994) (unpublished); *Bunting v. Gainsville Machine Co.*, 53 F.R.D. 594 (D.Del.1971). When investigating possible subrogation rights, the carrier is investigating and representing its *own* interests, not those of the injured employee, and therefore cannot be characterized as acting on the employee's behalf. *Id.* There has been no showing of any relationship between Mr. Nicklasch (or Mrs. Nicklasch) and the worker's compensation carrier at the time Mr. Campbell's statement was taken. *See Greener v. American Laundry Machinery, Division of McGraw Edison, Co.*, Civil Action No. 80–0304–K, 1983 U.S. Dist. Lexis 15573, *3, 36 Fed.R.Serv.2d 1194 (D.Mass., July 8, 1983) ("Cases dealing with the issue of whether an insurer is a 'party' within the meaning of Rule 26(b)(3), F.R.Civ.P. seem to hold that the insurer is not when the plaintiff brings suit in its own name but is when the insurer brings the suit"). Moreover, the interests of injured employees and their employers' insurers are likely adverse at such a time. *Poluch v. American Fan Co.*, 119 F.R.D. 621 (D.Mass.1988); *Bunting*, 53 F.R.D. at 596. Mr. Campbell's statement was taken just one day after Mr. Nicklasch's injury. At that time, the carrier had not decided to pay any claim and was likely investigating the accident for matters relevant to coverage (that the "accident aros[e] out of and in the course of the employment", Indiana Code Ann. §§ 22–3–2–2(a) and 22–3–2–5(a) (Burns 1997)), extent of injuries, and any bars to compensation ("No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer ..., or his knowing failure to perform any statutory duty", Indiana Code § 22–3–2–8). My review of Mr. Campbell's statement reveals that parts thereof do relate to these issues. We find the following passage from *Bunting* (also quoted in *Rickman*) persuasive and adopt it as a summation of our reasoning:

Liberty Mutual [the worker's compensation carrier] is not a 'party'. Nor is it a 'representative' or 'insurer' of plaintiffs as those terms are used in the Rule [Fed. R.Civ.P. 26(b)(3)], anymore than an insurance carrier of a person sued for negligence would be a 'representative' or 'insurer' of the injured party. Liberty Mutual, therefore, does not fall within the literal terms of Rule 26(b)(3).

Plaintiffs argue, however, that documents in the possession of Liberty Mutual fall within the spirit of the Rule. They point out that Liberty Mutual, up to the amount of the compensation benefits which it has paid to plaintiffs, is entitled, as subrogee, to any recovery by plaintiffs against defendant, and can at any time become a party of the action. Plaintiffs assert that for these reasons Liberty Mutual in practical effect stands in the shoes of the plaintiffs and the Rule should be interpreted to protect plaintiffs from having Liberty Mutual reveal its records.

The rule was enacted to protect a party against the disclosure of materials (work product), which it prepared or which someone on its behalf prepared, more likely than not at that party's own expense, in connection with the prosecution of that party's own action or the defense by that party of an action brought against it. The protection was intended to encompass documents prepared by a party or someone acting on its behalf to aid that party in the litigation.

The documents in the possession of Liberty Mutual do not fit this description. It was not paid by plaintiffs to assemble information for plaintiffs' use nor did it attempt to do so. In fact, in one aspect the interest of Liberty Mutual was adverse to plaintiffs' When plaintiffs presented their claim under the Workmen's Compensation law it was necessary for Liberty Mutual to be in a position to protect itself against the assertion by plaintiffs of a false or exaggerated claim of injury. To prevent this, it was in Liberty Mutual's interest, and not plaintiffs' to collect information about the accident and to expend whatever of its monies were necessary to obtain it.

Of course, as plaintiffs say, Liberty Mutual after paying plaintiffs, has an interest in having plaintiffs recover against the de-

fendant at least the amount which Liberty Mutual under the Compensation Act had already paid. As subrogee of the plaintiffs, Liberty Mutual, if plaintiffs recovered, would be entitled to be reimbursed by plaintiffs up to that amount. This interest, while identical with plaintiffs', is far more remote and not as immediate as was its own interest when it assembled documentary evidence to protect itself against any unjustified claim which plaintiffs might make under the Compensation laws. So far as the record discloses Liberty Mutual never called upon plaintiffs to pay for the investigatory work which it did nor did plaintiffs request Liberty Mutual to do any.

It would be stretching too far the language of Rule 26(b)(3) and the reason underlying it to accord plaintiffs the protection which the seek against the disclosure of the documents in the possession of Liberty Mutual.

*Bunting,* 53 F.R.D. at 595–96 (footnote omitted).

■ Second, the statement of Mr. Campbell was not "prepared in anticipation of litigation or for trial". It has not been shown that, by the time Mr. Campbell's statement was taken, the worker's compensation carrier had decided to pay compensation benefits, let alone had decided to pursue subrogation rights. An investigation that is undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation. *Stout v. Illinois Farmers Insurance Co.,* 150 F.R.D. 594 (S.D.Ind.1993), *order affirmed,* 852 F.Supp. 704 (S.D.Ind.1994); *Harper v. Auto-Owners Insurance Co.,* 138 F.R.D. 655 (S.D.Ind.1991); *American Insurance Co. v. Elgot Sales Corp.,* No. 97 CIV. 1327(RLC), 1998 WL 647206, 1998 U.S. Dist Lexis 14822 (S.D.N.Y., Sept. 21, 1998) (subrogated insurers failed to show that reports produced in anticipation of litigation where documents showed that no decision had been made on whether to pursue a subrogation claim; reports were part of insurer's usual process of evaluating and negotiating a claim presented by an insured) (quoting *Harper*).

In this case, no subrogation claim had been identified and no litigation was imminent or reasonably anticipated at the time Mr. Campbell's statement was taken. *See Taroli v. General Electric Co.,* 114 F.R.D. 97 (N.D.Ind.1987), *affirmed,* 840 F.2d 920 (7th Cir.1988) (unpublished). In addition, the statement was not taken in anticipation of this litigation. The carrier did not bring this suit as a subrogation suit in its own name or in the name of the plaintiffs. Finally, as noted above, the carrier had its own reasons to investigate Mr. Nicklasch's accident—*e.g.,* to determine coverage, injuries, and bars— reasons that involve interests adverse to the plaintiffs and that were independently sufficient in and of themselves to motivate the investigation in the ordinary course of business. In short, the statement of Mr. Campbell would have been taken regardless of anticipated litigation. *Stout, supra. See Logan v. Commercial Union Insurance Co.,* 96 F.3d 971, 976–77 (7th Cir.1996).

The statement of Pat Campbell taken by Mr. Nicklasch's employer's worker's compensation carrier is not work product and shall be produced to the defendants.